IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

CHRISTOPHER ALAN JOHNSTON,

      Plaintiff,

v.                              CIVIL ACTION NO. 1:23-00053

UNITED STATES OF AMERICA, et al.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

By Standing Order, this action was referred to United States Magistrate Judge Omar J. Aboulhosn for submission of findings and recommendation regarding disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  Magistrate Judge Aboulhosn submitted to the court his Proposed Findings and Recommendation ("PF&R") on November 9, 2023.  See ECF No. 25.  In that PF&R, he recommends that this court (1) deny plaintiff Christopher Johnston's motion for summary judgment, (ECF No. 24), and (2) grant in part and deny in part the defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment[,]" (ECF No. 15).  See ECF No. 25.

In accordance with the provisions of 28 U.S.C. § 636(b), the parties were allotted fourteen days and three mailing days to object to the PF&R.  Both parties filed timely objections. See ECF Nos. 26-27.

## I.   Background

Mr. Johnston, a former inmate at Federal Correctional
Institution McDowell, brings this suit against various prison
officials and medical staff members, alleging negligence claims
under the Federal Tort Claims Act, 28 U.S.C. § 1346 et seq., and
violations of his Eighth Amendment right against cruel and
unusual punishment pursuant to Bivens v. Six Unknown Fed.
Narcotics Agents, 403 U.S. 388 (1971).   See ECF No. 25 at 2.

Mr. Johnston's complaint, liberally construed, alleges that
he reported an abscessed tooth to a dental assistant at FCI
McDowell, defendant Megan Ray, but that she did not provide him
with antibiotics and required him to wait for an appointment
with the prison's dentist, defendant Veronica Brown.   See id.
After several weeks, he reported for an appointment with Dr.
Brown, but Ms. Ray rescheduled his appointment, and he still was
provided no antibiotics or other treatment for his abscessed
tooth.   See id.

Three weeks later, still without an appointment with Dr.
Brown and suffering "bad swelling," Mr. Johnston was evaluated
during an unrelated "Chronic Care" medical evaluation by a
Physician Assistant, defendant Casandra Carothers.   See id.   Ms.
Carothers, however, provided no medical treatment for the
abscessed tooth, telling Mr. Johnston that it was an issue for
the prison's dental department to address.   See id. at 3.

One month after his initial complaint to Ms. Ray, Mr.
Johnston finally received antibiotics after requesting them from
the "pill window."  See id.  By that point, however, the
infection was too severe, and the antibiotics had no effect.
See id.  Prison officials then transported Mr. Johnston to the
local emergency room where he was evaluated and later
transported by ambulance to UT Kentucky Medical Center.  See id.
During his seven-day hospitalization there, Mr. Johnston
received IV antibiotics and surgery.  See id.  This, he alleges,
was a near-death experience.  See id.

Based on these allegations, Mr. Johnston brings his
negligence and Bivens claims against Ms. Ray, Dr. Brown, Ms.
Carothers, and the Health Administrator at FCI McDowell,
"Administrator Bailey."

Magistrate Judge Aboulhosn recommends dismissing Mr.
Johnston's (1) negligence claims under the Tort Claims Act and
(2) his Bivens claims against Ms. Carothers and Administrator
Bailey.  However, Magistrate Judge Aboulhosn recommends allowing
Mr. Johnston's Bivens claims to proceed against Ms. Ray and Dr.
Brown.

Mr. Johnston objects generally to the dismissal of his
claims but is unresponsive to the PF&R's specific findings:  "If
the latest ruling and recommendation is going to dismiss my case
. . . I ask we allow a trial and [polygraph] test."  ECF No. 26

3

at 4.  The defendants, on the other hand, specifically object to the PF&R's finding that Mr. Johnston alleged valid <u>Bivens</u> claims against Ms. Ray and Dr. Brown.  <u>See</u> ECF No. 27.

## II.  Legal Standard

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, the court must "make a de novo determination upon the record . . . of any portion of the magistrate judge's disposition to which specific written objection has been made." However, the court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed.  <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140, 149–50 (1985).

Furthermore, de novo review is not required and is unnecessary "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." <u>Orpiano v. Johnson</u>, 687 F.2d 44, 47–48 (4th Cir. 1982); <u>see also</u> <u>United States v. Midgette</u>, 478 F.3d 616, 622 (4th Cir. 2007) ("[T]o preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection."); <u>McPherson v. Astrue</u>, 605 F. Supp. 2d 744, 749 (S.D.W. Va. 2009)

4

("[F]ailure to file a specific objection constitutes a waiver of the right to de novo review.").

"A document filed pro se is 'to be liberally construed.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  Specifically as to objections to a PF&R, courts are "under an obligation to read a pro se litigant's objections broadly rather than narrowly."  Beck v. Comm'r of Internal Revenue Serv., No. 2:96CV308, 1997 WL 625499, at *1-2 (W.D.N.C. June 20, 1997) (citing Orpiano, 687 F.2d at 48).  Nevertheless, objections that are "unresponsive to the reasoning contained in the PF&R" are irrelevant and must be overruled.  Kesterson v. Toler, No. 2:09-0085, 2009 WL 2060090, at *1 (S.D.W. Va. July 7, 2009) (citing Orpiano, 687 F.2d at 47).

### III. Discussion

Because Mr. Johnston raises a general, non-responsive objection to the dismissal of his claims, that objection is **OVERRULED**.  The court will, however, consider the defendants' objection, which has been properly raised.  They argue that the PF&R incorrectly finds that Mr. Johnston's Bivens claims fall within one of the three, narrow contexts in which a Bivens claim may be raised.

A Bivens claim is an implied, judicially-created cause of action that may be raised against a federal agent "for damages

5

consequent upon his unconstitutional conduct." Bivens, 403 U.S. at 389.  The implied cause of action was initially confined to claims arising from alleged Fourth Amendment violations.  See id.  It was later expanded to two other contexts:  claims of sex discrimination in violation of the Fifth Amendment, see Davis v. Passman, 442 U.S. 228 (1979), and claims of deliberate indifference to medical needs in violation of the Eighth Amendment, see Carlson v. Green, 446 U.S. 14 (1980).

Since extending Bivens claims to those two additional contexts, the Supreme Court has not expanded the cause of action any further, explaining that "[n]ow long past 'the heady days in which this Court assumed common-law powers to create causes of action,' Malesko, 534 U.S. at 75, 122 S.Ct. 515 (Scalia, J., concurring), we have come 'to appreciate more fully the tension between' judicially created causes of action and 'the Constitution's separation of legislative and judicial power,' Hernández, 589 U. S., at ----, 140 S.Ct., at 741."  Egbert v. Boule, 596 U.S. 482, 491 (2022).  For this reason, "[w]hen asked to imply a Bivens action, 'our watchword is caution.'"  Id. (quoting Hernandez v. Mesa, 140 S. Ct. 735, 742 (2020)).

Accordingly, the implied cause of action is carefully restricted to the three types of "Bivens cases" established in Bivens, Davis, and Carlson, and it is a "disfavored judicial activity" for a court to extend the implied cause of action to

6

any "new context."  See Hernandez, 140 S. Ct. at 742-43.  Thus,

when determining whether to allow a Bivens claim to proceed,

courts should conduct a two-step inquiry:  first, the court

should "ask whether the case presents 'a new Bivens context'—

i.e., is it 'meaningful[ly]' different from the three cases in

which the Court has implied a damages action[,]"  Boule, 596

U.S. at 492 (quoting Ziglar v. Abbasi, 137 S. Ct. 1843, 1859-60

(2017)), and second, "if a claim arises in a new context, a

Bivens remedy is unavailable if there are 'special factors'

indicating that the Judiciary is at least arguably less equipped

than Congress to 'weigh the costs and benefits of allowing a

damages action to proceed[,]'" id. (quoting Ziglar, 137 S. Ct.

at 1858).

    This inquiry, the United States Court of Appeals for the

Fourth Circuit has explained, is a "'highly restrictive two-step

analysis for Bivens cases,' intended to 'severely limit the

reach of Bivens.'"  Nellson v. Doe, No. 21-6206, 2023 WL 3336689,

at *3 (May 10, 2023) (quoting Bulger v. Hurwitz, 62 F.4th 127,

137 (4th Cir. 2023)).

    As to the first step, "[t]he Supreme Court's understanding

of a 'new context' is broad, requiring only some 'meaningful'

difference from a previous Bivens case."  Id. (quoting Tate v.

Harmon, 54 F.4th 839, 844 (4th Cir. 2022)).  The understanding

is so broad, in fact, that "[e]ven claims alleging deliberate

indifference to an inmate's medical needs, though they 'involve the same "right and mechanism of injury" as in Carlson,' may 'still present "different" contexts.'" Id. (quoting Bulger, 62 F.4th at 138).  Determining whether a claim arises in an existing Bivens context is not always a simple determination, especially when the adequacy of medical care is at issue.  The question requires courts to precisely define and analyze the context of the Bivens claim in Carlson because "[e]ven a modest extension is still an extension."  Ziglar, 582 U.S. at 147.

In Carlson, the estate of a deceased inmate sued prison officials alleging that they (1) knew of the gross inadequacy of medical facilities and staff at the prison, (2) knew of the seriousness of the deceased inmate's asthmatic condition, (3) nonetheless kept the inmate at the facility against the advice of doctors, (4) failed to give him competent medical attention for some eight hours after an asthma attack, (5) administered the incorrect drugs that made the attack worse, (6) used an inoperative respirator, (7) unduly delayed his transfer to an outside hospital, and (8) caused his death.  Carlson, 446 U.S. at 17 n.1.  The Court held that "victims of the kind of intentional wrongdoing alleged in this complaint shall have an action under . . . Bivens . . . against the individual officials alleged to have infringed their constitutional rights."  Id. at 20.

When defining the context of the <u>Bivens</u> claim in <u>Carlson</u> and determining whether a claim falls within that context, courts have come down in two ways.  "Some courts have broadly compared alleged facts against <u>Carlson</u>."  <u>Qazi v. Seroski</u>, No. 22-cv-00014-PAB-MEH, 2023 WL 3871969, at *5 (D. Colo. May 11, 2023).  "Yet other courts compared allegations, including severity, more specifically against those in <u>Carlson</u>."  <u>Id</u>. Under the latter, more-nuanced approach, many courts have "required fatality or a medical emergency to equate [in] severity with <u>Carlson</u>."  <u>Id</u>.

In this case, the PF&R recommends more broadly comparing Mr. Johnston's allegations to those in <u>Carlson</u>:

> Like <u>Carlson</u>, the instant action is predicated upon the Eighth Amendment and involves a claim for the denial of medical care in a prison setting.  In both cases, the prisoner suffered from a medical condition that he allegedly received [due to] inadequate treatment despite each defendant's alleged awareness of the serious risks of harm posed by the inadequate treatment.  In both cases, the alleged cause of the prisoner's injury is the failure to provide adequate medical care.

ECF No. 25 at 22-23.  This suggested approach looks to the general nature of the claim:  the constitutional amendment giving rise to the claim, the risk of harm, the seriousness of the medical condition, and the alleged inadequate medical

9

treatment.  On the other hand, the defendants advocate for a
very specific comparison of facts:

> There are striking and significant
> differences between the current case and
> Carlson.  First, the plaintiff here is not
> deceased as a result of the alleged
> inadequate medical care.  Second, the
> condition with which [Mr. Johnston]
> originally presented (an abscessed tooth)
> was not emergent, but it became so after
> antibiotics proved ineffective, and prison
> officials arranged for his care at an
> outside hospital, which resolved his
> condition.  Third and relatedly, prison
> dental staff did not ignore or proceed
> against the recommendation of other health
> care providers.  Finally, dental staff did
> not apply wrong treatments that hastened or
> worsened [Mr. Johnston's] symptoms or
> condition, as was the case in Carlson.

ECF No. 27 at 3.  This suggested approach requires the death of
the inmate and the exact allegations of deliberate indifference
that were at issue in Carlson.

     That level of factual overlap is not necessary for a claim
to fall within the context of Carlson.  In the wake of the
recent Supreme Court cases explaining the limits of Bivens, the
United States Court of Appeals for the Fourth Circuit has
rejected arguments like the one raised by the defendants.

     For example, in Masias v. Hodges, No. 21-6591, 2023 WL
2610230, at *1 (4th Cir. Mar. 23, 2023) (per curium), an inmate
brought a Carlson-style Bivens claim against prison officials
alleging that he received delayed treatment for a nasal

10

infection and had been denied treatment for a hernia, an ankle injury, and issues with his toenail.  The district court dismissed the inmate's claim because his "claims were not as severe as those in Carlson and were not likely to cause permanent damage or death[,]" id., but the Court of Appeals reversed, finding that the alleged facts "do not present a new context and that, viewing the facts alleged in the light most favorable to [the inmate], a Bivens remedy was available[,]" id. at *2.

In rendering that decision, the Court of Appeals relied on Langford v. Joyner, 62 F.4th 122 (4th Cir. 2023), a similar case it had decided earlier that month.  In that case, an inmate sued prison officials under Bivens alleging deliberate indifference to his serious medical needs because (1) he suffered from an abdominal infection due to a small bowel obstruction, (2) he was "refused treatment or even an examination of his physical condition[,]" (3) "his worsening medical condition was obvious from his physical appearance[,]" and (4) his delayed treatment resulted in surgery and permanent injury.  Id. at 123-24.  The defendants in that case conceded that the inmate "pled a serious medical condition in the form of his small bowel obstruction and related complications."  Id. at 124.

Even more recently, in May 2023, the Court of Appeals addressed a related argument in Nellson, No. 21-6206, 2023 WL

3336689, at *1.  In that case, an inmate brought a <u>Bivens</u> claim,

alleging that prison officials "denied him adequate medical care

when they placed him in a special housing unit without a walker

or wheelchair despite his inability to walk without assistance,

forcing him to crawl on the ground."  <u>Id</u>.  The court found that

despite the inmate claiming deliberate indifference to his

medical needs, his claim presented a new <u>Bivens</u> context because

he really challenged "a purely administrative decision:  his

placement in the SHU, where standard policy, for safety and

security reasons, does not permit mobility devices."  <u>Id</u>. at *4.

The court reasoned that the inmate's failure-to-accommodate

claim was "less like <u>Carlson</u>, which turned on decisions about an

inmate's <u>medical</u> care, and more like <u>Tate</u> and <u>Bulger</u>, in which

we held that claims arising from administrative placement

decisions fall outside <u>Carlson</u>'s 'context.'"  <u>Id</u>. (citing <u>Tate</u>,

54 F.4th at 846-47).

    These cases undermine the defendants' argument that an

inmate must die for the inmate's <u>Bivens</u> claim to fall within the

context of <u>Carlson</u>, and the cases also clarify that prison

officials can act with deliberate indifference to serious

medical needs under various circumstances, not just those

demonstrated in <u>Carlson</u>, so long as that deliberate indifference

related to decisions about the inmate's medical care and not

strictly administrative decisions.  Mr. Johnston's <u>Bivens</u> claims

fall within the context of deliberate indifference claims outlined in these cases.

Like <u>Masias</u>, Mr. Johnston alleges that he suffered from an ailment and infection for which treatment was significantly delayed or outright denied.  Like <u>Langford</u>, he also alleges that he was denied an examination, that his condition noticeably worsened over time, and that his condition later required surgery.  This is not a case like <u>Nellson</u> where the inmate raised a failure-to-accommodate claim challenging purely administrative decisions.  As the Court of Appeals emphasized in that case, Mr. Johnston's claims of deliberate indifference turn on decisions about his medical care.  For these reasons, Mr. Johnston's <u>Bivens</u> claims fall within the context of <u>Carlson</u>.

Therefore, the defendants' objection to the PF&R is **OVERRULED.**

## IV.  Conclusion

The court has reviewed the record, the Magistrate Judge's PF&R, and the parties' objections.  For the reasons discussed above, the parties' objections (ECF Nos. 26 & 27) are **OVERRULED.**

The court adopts the Findings and Recommendation of Magistrate Judge Aboulhosn as follows:

1. Plaintiff's motion for summary judgment (ECF No. 24) is
   **DENIED;** and

2.  Defendants' "Motion to Dismiss, or in the Alternative,

    Motion for Summary Judgment" (ECF No. 15) is **GRANTED** in

    part and **DENIED** in part.

The court **REFERS** this matter back to Magistrate Judge Aboulhosn

for further proceedings regarding plaintiff's remaining <u>Bivens</u>

claims.

      **IT IS SO ORDERED** this 3rd day of January, 2024.

                  ENTER:

                  David A. Faber
                  Senior United States District Judge