## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### BLUEFIELD DIVISION

CHRISTOPHER ALAN JOHNSTON,     )
                                  )
           **Plaintiff,**           )
**v.**                               )     **Civil Action No. 1:23-00053**
                                  )
**UNITED STATES OF AMERICA, *et al.*,**     )
                                  )
          **Defendants.**        )

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Defendants' "Second Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 29), filed on January 17, 2024. The Court notified Plaintiff pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendants in moving to dismiss. (Document No. 30.) Plaintiff filed his Response in Opposition on April 11, 2024, and Supplemental Response on April 19, 2024. (Document No. 39 and 41.) Defendants filed a Reply on April 22, 2024. (Document No. 44.) Without obtaining permission from the Court, Plaintiff filed what appears to be a Surreply on April 25, 2024. (Document No. 46.) Having examined the record and considered the applicable law, the undersigned has concluded that Defendants' "Second Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 29) should be granted.

### PROCEDURAL HISTORY

On February 3, 2023, Plaintiff, acting *pro se*, filed his Amended Complaint for alleged violations of his constitutional and civil rights pursuant to <u>Bivens v. Six Unknown Federal Agents</u>

<u>of Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971) and negligent conduct pursuant to Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671, *et seq.* [1] (Document No. 5.) In his Amended Complaint, Plaintiff named the following as Defendants: (1) United States of America; (2) Megan Ray, Dental Assistant at FCI McDowell; (3) Veronica Brown, Dental Doctor as FCI McDowell; (4) Casandra Carothers, Physician Assistant at Medical Services at FCI McDowell; and (5) Administrator Bailey, Health Administrator at FCI McDowell. (<u>Id.</u>) Plaintiff alleges that the above Defendants acted with negligence and deliberate indifference concerning his need for treatment concerning an abscessed tooth. (<u>Id.</u>, pp. 7 - 8.) Plaintiff explains that on April 20, 2022, he went to dental sick-call complaining of an abscessed tooth. (<u>Id.</u>) Plaintiff states that Defendant Ray instructed him to watch call-out for an appointment, but provided no antibiotics. (<u>Id.</u>) After "weeks go by," Plaintiff states that he reported to call-out for his appointment with Defendant Brown. (<u>Id.</u>) Plaintiff, however, states that Defendant Ray informed him that his appointment with Defendant Brown had been rescheduled and to watch call-out for his new appointment. (<u>Id.</u>) Plaintiff complains that no antibiotics or other medication was provided as treatment pending his rescheduled appointment date. (<u>Id.</u>) Approximately three weeks later, Plaintiff asserts that he was evaluated by Defendant Carothers during a Chronic Care Visit and complained of "bad swelling" from his abscessed tooth. (<u>Id.</u>) Plaintiff, however, states that Defendant Carothers failed to provide any medication or treatment stating that such was a dental issue. (<u>Id.</u>) Plaintiff alleges that on May 20, 2022, he requested antibiotics at the "pill window" and "finally received some but the infection was too far infected and didn't work." (<u>Id.</u>) Plaintiff

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

alleges that on May 26, 2022, he was taken to the "Welch Emergency Room" where he was evaluated and then transported by ambulance to UT Kentucky Medical Center. (Id.) During his seven day hospitalization at UT Kentucky Medical Center, Plaintiff alleged that he received IV antibiotics and surgery. (Id.) Plaintiff alleged that as a result of Defendants' negligence and deliberate indifference, he became septic "to the point of hospitalization and near death." (Id.) As relief, Plaintiff requested monetary damages. (Id.)

As Exhibits, Plaintiff attaches the following: (1) A copy of a "Rejection Notice-Administrative Remedy" dated July 6, 2022, from the Administrative Remedy Coordinator at FCI McDowell (Remedy ID 1125662-F1) (Document No. 6, pp. 1 and 14); (2) A copy of Plaintiff's "Request for Administrative Remedy Informal Resolution Form" dated June 16, 2022 (Id., pp. 2 and 15.); (3) A copy of Correctional Counselor J. Fields' "Response to Informal Resolution Attempt" dated June 15, 2022 (Id., pp. 3 and 16.); (4) A copy of Warden E. Rokosky's Response to Plaintiff's request for a reduced sentence or compassionate release dated July 18, 2022 (Id., pp. 4 and 17.); (5) A copy of Plaintiff's "Central Office Administrative Remedy Appeal" dated July 18, 2022 (Remedy ID 1125662-R1) (Id., pp. 5 – 8.); (6) A copy of Plaintiff's "Request for Administrative Remedy" dated June 16, 2022 (Remedy ID 1125662-F1) (Id., p. 9.); (7) A copy of Plaintiff's "Inmate Request to Staff" dated June 2, 2022 (Id., pp. 10 - 12 and Document No. 6-1, pp. 41 - 42.); (8) A copy of Plaintiff's "Sensitive Complaint" addressed to the Warden (Document No. 6, p. 13 and Document No. 6-1, pp. 39 - 40.); (9) A copy of Plaintiff's "Inmate Discipline Data Chronological Disciplinary Record" dated September 29, 2022 (Document No. 6, p. 18.); and (10) A copy of Plaintiff's medical records (Id., pp. 19 – 110, Document No. 6-1, pp. 1 – 38, 43 – 56, Document No. 6-2, Document No. 6-3).

By Order entered on March 9, 2023, the undersigned directed the Clerk to issue process in this case by preparing and serving a Summons and a copy of Plaintiff's Amended Complaint upon each Defendant as specified in Rule 4(i)(1) - (3) of the Federal Rules of Civil Procedure. (Document No. 7.) The Clerk's Office issued process the same day. (Document No. 8.) On May 10, 2023, Defendants filed a "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" and Memorandum in Support. (Document Nos. 15 and 18.) Defendants argued that Plaintiff's FTCA claim should be dismissed based on the following: (1) Plaintiff failed to exhaust his administrative remedies (Document No. 18, pp. 8 – 10); (2) "Plaintiff failed to state a claim for relief under the West Virginia Medical Professional Liability Act" (Id., pp. 10 – 12); and (3) "The United States has not waived sovereign immunity for constitutional claims under the FTCA" (Id., pp. 12 – 13). Defendants argued that Plaintiff's Bivens claim should be dismissed based on the following: (1) "All named Defendants are entitled to qualified immunity" (Id., pp. 13 – 12); (2) "Following *Egbert*, Plaintiff's individual capacity claims are not cognizable under *Bivens*" (Id., pp. 14 – 26); (3) "Plaintiff fails to establish Defendant Bailey's personal involvement" (Id., p. 26); and (4) Defendant Carothers is entitled to absolute immunity from a Bivens suit as a commissioned officer in the United States Public Health Service (Id., pp. 26 – 27).

As Exhibits, Defendants attached the following: (1) The Declaration of Misty Shaw (Document No. 15-1, pp. 2 – 6); (2) (2) A copy of Plaintiff's "Inmate History - Adm-Rel" (Id., pp. 8 - 9); (3) A copy of Plaintiff's "Sentencing Monitoring Computation Data As Of 01-09-2023" (Id., pp. 11 – 18); (4) A copy of Plaintiff's pertinent medical records (Document No. 15-1, pp. 20 - 181 and Document No. 15-2, pp. 1 - 164); (5) A copy of Clinical Guidance regarding dental infections (Document No. 15-2, pp. 166 - 168); (6) A copy of Plaintiff's "Claim for Damage,

Injury, or Death" as filed on the Standard Form 95 dated October 9, 2022 (Id., pp. 170 - 171); and (7) A copy of Plaintiff's Administrative Remedy Generalized Retrieval dated March 14, 2023 (Id., pp. 173 – 175).

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on May 11, 2023, advising him of the right to file a response to Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgement." (Document No. 19.) On May 19, 2023, Plaintiff filed his Response in Opposition to Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." (Document No. 20.) On July 3, 2023, Plaintiff filed his Motion for Summary Judgment. (Document No. 24.) By Proposed Findings and Recommendation ("PF&R") entered on November 9, 2023, the undersigned recommended as follows:

> [T]hat the District Court **DENY** Plaintiff's Motion for Summary Judgment (Document No. 24), **GRANT in part and DENY in part** Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 15). Specifically, the undersigned **RECOMMENDS** that Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 15) be **GRANTED** as to Plaintiff's FTCA claim and as to Plaintiff's Bivens claim against Defendants Carothers and Bailey. The undersigned **RECOMMENDS** that Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 15) be **DENIED** as to Plaintiff's Bivens claim against Defendants Ray and Brown.

(Document No. 25.) Plaintiff filed Objections on November 20, 2023, and Defendants filed Objections on November 21, 2023. (Document Nos. 26 and 27.) By Memorandum Opinion and Order entered on January 3, 2024, United States District Judge David A. Faber overruled the parties' Objections, adopted the undersigned's PF&R, denied Plaintiff's Motion for Summary Judgment, granted in part and denied in part Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment," and referred the matter back to the undersigned for further

proceeding regarding Plaintiff's remaining <u>Bivens</u> claim against Defendants Ray and Brown. (Document No. 28.)

On January 17, 2024, Defendants Brown and Ray filed their "Second Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" and Memorandum in Support. (Document Nos. 29 and 30.) Defendants argue that Plaintiff's claim should be dismissed became Plaintiff has failed to allege sufficient facts demonstrating that Defendants Brown and Ray were deliberately indifferent to his medical needs. (<u>Id.</u>) As Exhibits, Defendants attach the following: (1) The Declaration of Anthony Shrader (Document No. 29-4, p. 2); (2) A copy of Plaintiff's Call Out for May 4, 2022 (<u>Id.</u>, p. 5); and (3) A copy of Plaintiff's pertinent medical records (Document Nos. 29-1, 29-2, 29-3, 29-5, 29-6, 29-7, 29-8, 29-9, and 29-10).

The Court notified Plaintiff pursuant to <u>Roseboro</u>, that Plaintiff had the right to file a response to Defendants Brown and Ray's Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendants Brown and Ray in moving to dismiss. (Document No. 31.) Despite being warned by the Court in accordance with <u>Roseboro</u> that inaction could result in dismissal of his action, Plaintiff did not file a response to Defendants Brown and Ray's above "Second Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 29). After noting Plaintiff's lack of activity in this case, the undersigned issued an Order on February 28, 2024, directing Plaintiff to "show cause in writing on or before March 13, 2024, as to why this civil action should not be dismissed for failure to prosecute." (Document No. 33.) On March 15, 2024, Plaintiff filed what appeared to be a response to the Court's Show Cause Order noting that he had been re-incarcerated and providing an updated address. (Document No. 34.) On March 21, 2024, Plaintiff filed a letter-form Motion for Extension of Time to file a Response in Opposition to "Defendants' Second

Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." (Document No. 37.) On March 22, 2024, the undersigned granted Plaintiff's letter-form Motion for Extension of Time allowing Plaintiff until April 12, 2024, to file his Response in Opposition. (Document No. 38.)

On April 11, 2024, Plaintiff filed his Response in Opposition. (Document No. 39.) Plaintiff argues that a review of his medical records will reveal that Defendants cannot deny their deliberate indifference to his dental needs. (Id., p. 1.) Plaintiff argues that had Defendants prescribed him ten (10) days of antibiotics the day of his x-ray, the "whole issue" would have been avoided. (Id.) Plaintiff states that Defendants Brown and Ray "went against their degrees [and] training." (Id.) Plaintiff then argues that PA Carothers[2] acted with "pure medical negligence and intentional indifference" because she was aware that Plaintiff's "mouth was swelled completely shut as well as my head doubled in size on the left side." (Id., p. 2.) Plaintiff claims that due to improper care, he experienced a "medical emergency" where his "blood, brain, heart had toxic poison going through it [because his] blood was poison." (Id.) Plaintiff contends that "dental staff had a chance to prevent this, but did not." (Id.) Plaintiff states that he begged for help each morning at "pill line," but was refused help. (Id., pp. 2 - 4.) Plaintiff states that he "showed up each morning thru this whole issue." (Id., p. 4.) Finally, Plaintiff requests that the Court award him $660,000 in damages. (Id.)

On April 19, 2024, Plaintiff filed his Supplemental Response. (Document No. 41.) Plaintiff continues to state that PA Carothers acted with deliberate indifference because she was aware that Plaintiff was "begging" for help every day at "pill line." (Id.) Plaintiff then concludes that "PA Casandra Carothers, Veronica Brown, and Assistant Megan Ray violated [his] Eighth

_____

[2] As stated above, Plaintiff's claims against PA Carothers have been dismissed.

Amendment" rights. (<u>Id.</u>)

In Reply, Defendants Brown and Ray argue that Plaintiff's responses are "entirely dedicated to the alleged actions of PA Carothers and the nurses working in the daily pill line." (Document No. 44.) Defendants Brown and Ray note that these "individuals are not defendants in the case." (<u>Id.</u>) Defendants assert that the "only mention of Defendants Ray and Brown is a bald assertion that they 'went against' their education and training." (<u>Id.</u>) Thus, Defendants Brown and Ray argue that Plaintiff has failed to present any new allegations or facts against the Defendants that would save his claim from dismissal. (<u>Id.</u>) Finally, Defendants note that Plaintiff "has not challenged the course of care which is clearly evident in the record." (<u>Id.</u>)

In his Surreply, Plaintiff first appears to dispute he was a "no show" for his scheduled tooth extraction.[3] (Document No. 46.) In support, Plaintiff merely argues that he has "clear conduct that means [Plaintiff] never 'no showed' like the dental staff stated." (<u>Id.</u>) Next, Plaintiff claims that the medical records clearly show that Defendants "deliberately showed indifference." (<u>Id.</u>) Plaintiff continues to argue that PA Carothers should have known that an individual becoming septic is a "major medical issue, not just dental." (<u>Id.</u>)

**THE STANDARD**

**Motion to Dismiss**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S.

---

[3] Local Rule of Civil Procedure 7.1(a)(7) provides that "[s]urreply memoranda shall not be filed except by leave of court." *See also Johnson v. Ford Motor Co.*, 2005 WL 2353469 (S.D.W.Va. Sept. 26, 2005)(stating that the "motion to strike is granted because plaintiff's surreply is not permitted by either the Federal or Local Rules of Civil Procedure.") Although Plaintiff does not allege that new arguments were raised in Defendant's Reply, the Court is disinclined to deny Plaintiff the opportunity to file a Surreply in view of the less stringent standard applicable in this case by virtue of Plaintiff's *pro se* status. Accordingly, the undersigned will consider Plaintiff's Surreply.

662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

Federal Courts are Courts of limited jurisdiction that are empowered to consider cases authorized by Article III of the United States Constitution and statutes enacted by Congress. Bender v. Williamsport Area School District, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). A motion to dismiss filed pursuant to Rule 12(b)(1) raises the question of the federal court's subject matter jurisdiction. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Once subject matter jurisdiction is challenged, plaintiff bears the "burden of proving that subject matter jurisdiction exists." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). Subject matter jurisdiction cannot be waived by the Court or the parties. The absence of subject-matter jurisdiction may be raised at any time. Lovern v. Edwards, 190 F.3d 648 (4th Cir. 1999). When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a District Court may refer to evidence outside the pleadings without converting the proceeding to one for summary judgment. See William v. United States, 50 F.3d 299 (4th Cir. 1995).

9

## Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. "A fact is 'material' if proof of its existence or non-existence would affect disposition of the case under applicable law. An issue of material fact is 'genuine' if the evidence offered is such that a reasonable jury might return a verdict for the non-moving movant." Wai Man Tom v. Hospitality Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020)(citations omitted.); also see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(A "material fact" is a fact that could affect the outcome of the case); CTB, Inc. v. Hog Slat, Inc., 954 F.3d 647, 658 (4th Cir. 2020)("A genuine question of material fact exists where, after reviewing the record as a whole, a court finds that a reasonable jury could return a verdict of the nonmoving party."); FDIC v. Cashion, 720 F.3d 169, 180 (4th Cir. 2013)(A "genuine issue" of material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor). "The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact." Wai Man Tom, 980 F.3d at 1037. The moving party may satisfy this burden by showing that the non-moving party has failed to prove an essential element of the non-moving party's case that the non-moving party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)(Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim.). Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. See Celotex Corp., 477 U.S. at 325,

10

106 S.Ct. 2548; <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986); <u>also see</u> <u>Wai Man Tom</u>, 980 F.3d at 1037(citation omitted)("[T]o survive the motion for summary judgment, [the non-moving party] may not rest on the allegations averred in his pleadings. Rather, the nonmoving party must demonstrate specific, material facts exist that give rise to a genuine issue.") Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. <u>Anderson</u>, 477 U.S. at 247-48, 106 S.Ct. 2505("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."); <u>Perry v. Kappos</u>, 2012 WL 2130908, * 3 (4th Cir. 2012)(<u>quoting</u> <u>Beale v. Hardy</u>, 769 F.2d 213, 214 (4th Cir. 1985)("At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action.") All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. <u>Matsushita</u>, 475 U.S. at 587, 106 S.Ct. at 1356; <u>also see</u> <u>Sedar v. Reston Town Center Property, LLC</u>, 988 F.3d 756, 763 (4th Cir. 2021)("The requirement to construe the facts, and all reasonable inferences therefrom, in the light most favorable to the non-moving party does not require [the court] to accept cherry-picked snippets of the testimony divorced from their context."). Additionally, the court is not allowed to make credibility determinations or weigh the evidence at the summary judgment stage. <u>Stanton v. Elliott</u>, 25 F.4th 227, 234 (4th Cir. 2022)(noting that the disbelief in a non-moving party's ability to succeed on the merits is insufficient to grant summary judgment). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate. <u>See</u> <u>Moss v. Parks Corp.</u>, 985 F.2d 736, 738 (4th Cir. 1993)(Summary judgment is proper where it is apparent from the record that "no

reasonable jury could find for the nonmoving party.")

## DISCUSSION

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. at 395-97, 91 S.Ct. at 2004-05. A Bivens action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under Bivens must show the violation of a valid constitutional right by a person acting under color of federal law. The United States Supreme Court has held that an inmate may name a federal officer in an individual capacity as a defendant in alleging an Eighth Amendment constitutional violation pursuant to Bivens. See Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). However, Bivens claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. See FDIC v. Meyer, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); Berger v. Pierce, 933 F.2d 393, 397 (6th Cir. 1991); Reinbold v. Evers, 187 F.3d 348, 355 n. 7 (4th Cir. 1999).

As a general matter, punishments prohibited under the Eighth Amendment include those that "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)(quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). "It not only outlaws excessive sentences but also protects

inmates from inhumane treatment and conditions while imprisoned." <u>Williams v. Benjamin</u>, 77 F.3d 756, 761 (4th Cir. 1996). Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." <u>Wolfish v. Levi</u>, 573 F.2d 118, 125 (2d Cir. 1978), <u>rev'd on other grounds</u>, <u>Bell v. Wolfish</u>, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Thus, sentenced prisoners are entitled to reasonable protection from harm at the hands of fellow inmates and prison officials under the Eighth Amendment. <u>See Farmer v. Brennan,</u> 511 U.S. 825, 832-34, 114 S.Ct. 1970, 1976-77, 128 L.Ed.2d 811 (1994); <u>Trop v. Dulles</u>, 356 U.S. 86, 102, 78 S.Ct. 590, 598-99, 2 L.Ed.2d 630 (1958); <u>Woodhous v. Commonwealth of Virginia</u>, 487 F.2d 889, 890 (4th Cir. 1973). Inmates' claims, therefore, that prison officials disregarded specific known risks to their health or safety are analyzed under the deliberate indifference standard of the Eighth Amendment. <u>See Pressly v. Hutto</u>, 816 F.2d 977, 979 (4th Cir. 1987); <u>Moore v. Winebrenner</u>, 927 F.2d 1312, 1316 (4th Cir. 1991) <u>cert. denied</u>, 502 U.S. 828, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991)(Stating that supervisory liability may be imposed where prison supervisors "obdurately," "wantonly," or "with deliberate indifference" fail to address a known pervasive risk of harm to an inmate's health or safety). To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. <u>Wilson v. Seiter</u>, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991); <u>also see King v. Rubenstein</u>, 825 F.3d 206, 218 (4th Cir. 2016)(quoting <u>Strickler v. Waters</u>, 989 F.2d 1375, 1379 (4th Cir. 1993))("[T]o make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'");

13

Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008)(explaining that the above requirements "spring from the text of the amendment itself; absent intentionality, a condition imposed upon an inmate cannot properly be called 'punishment,' and absent severity, a punishment cannot be called 'cruel and unusual.'") To satisfy the objective component, Plaintiff must show that the challenged condition caused or constituted an extreme deprivation. De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003). To demonstrate an "extreme deprivation," a plaintiff "must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from [his] exposure to the challenged conditions." Odom v. South Caroline Dept. of Corrections, 349 F.3d 765, 770 (4th Cir. 2003); also see Wilson v. Seiter, 501 U.S. at 298, 111 S.Ct. at 2321(A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities."); White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In *Strickler*, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") To satisfy the subjective component, Plaintiff must demonstrate a "deliberate indifference" to his health and safety by defendants. In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, supra, 511 U.S. at 837, 114 S.Ct. at 1979. Plaintiff in this case must therefore allege and establish that each Defendant was aware of the excessive risk to Plaintiff's health or safety and each Defendant disregarded that risk.

In his Amended Complaint, Plaintiff contends that Defendants have violated his Eighth Amendment rights by acting with deliberate indifference concerning his need for medical and/or

dental treatment regarding his abscessed tooth. (Document No. 5.) Specifically, Plaintiff complains that Defendants disregarded his need for appropriate treatment thereby allowing it to progress to Plaintiff becoming septic and "near death." (Id.) Plaintiff alleges that on April 20, 2022, he went to dental sick-call complaining of an abscessed tooth. (Id.) Plaintiff states that Defendant Ray instructed him to watch call-out for an appointment, but provided no antibiotics. (Id.) After "weeks go by," Plaintiff states that he reported to call-out for his appointment with Defendant Brown. (Id.) Plaintiff, however, states that Defendant Ray informed him that his appointment with Defendant Brown had been rescheduled and to watch call-out for his new appointment. (Id.) Plaintiff complains that no antibiotics or other medication was provided as treatment pending his rescheduled appointment date. (Id.) Approximately three weeks later, Plaintiff asserted that he was evaluated by PA Carothers during a Chronic Care Visit and complained of "bad swelling" from his abscessed tooth. (Id.) Plaintiff again complains that no medication or treatment was provided because PA Carothers informed Plaintiff that such was a dental issue. (Id.) Plaintiff alleges that on May 20, 2022, he requested antibiotics at the "pill window" and "finally received some but the infection was too far infected and didn't work." (Id.) Plaintiff alleged that on May 26, 2022, he was taken to the "Welch Emergency Room" where he was evaluated and then transported by ambulance to UT Kentucky Medical Center because he was septic. (Id.)

In their Motion, Defendants Brown and Ray argue that Plaintiff cannot establish an Eighth Amendment claim of deliberate indifference. (Document Nos. 29 and 30.) Defendants Brown and Ray argue that Plaintiff was evaluated and treated each time he presented to health services. (Document No. 30, pp. 9 - 11.) Defendants Brown and Ray note that Plaintiff received multiple courses of antibiotics by multiple providers and he was scheduled for tooth extraction, but Plaintiff failed to show for his appointment. (Id., p. 11.) Defendants Brown and Ray argue that Plaintiff

was provided "constant and appropriate medical treatment for his condition and has failed to establish deliberate indifference on the part of staff." (Id.)

Plaintiff alleges that Defendants Brown and Ray acted with deliberate indifference by failing to provide appropriate treatment for his abscessed tooth thereby allowing it to progress to Plaintiff becoming septic and "near death."[4] For purposes of an Eighth Amendment claim, a medical need is serious if it involves a condition which places an inmate at substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment causes continuous severe pain. Defendants Brown and Ray do not appear to dispute that Plaintiff's medical need was serious. Accordingly, the undersigned will assume for purposes of this motion that Plaintiff's condition was serious enough to give rise to an Eighth Amendment claim.

Next, the undersigned will consider whether the Defendants Brown and Ray acted with deliberate indifference to Plaintiff's health and safety under a subjective standard. To satisfy the subjective component, Plaintiff must allege each Defendant's consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. A review of Plaintiff's medical records reveal that Plaintiff first reported to Health Services at FCI Edgefield complaining of tooth pain regarding tooth # 17 on March 3, 2021. (Document No. 29-6, pp. 60, 68 - 70.) Health Services recommended extraction, but Plaintiff refused the surgery. (Id.) Plaintiff signed a refusal document that was also signed by a witness.[5] (Id., p. 103.) Despite Plaintiff's refusal of extraction, Health

---

[4] Although Plaintiff alleges that he was "near death" when he was transferred to Pikeville Medical Center, a review of Plaintiff's medical records does not support such an allegation. (Document No. 29-8, pp. 67 – 78.) Plaintiff's medical records from Pikeville Medical Center reveals that on May 26, 2022, Plaintiff was evaluated by medical staff and an "on-call dentist" who scheduled Plaintiff for surgical intervention on May 30, 2022. (Id.) It was determined that Plaintiff would receive IV antibiotics and be monitored for clinical worsening until his surgery date. (Id.) It was also noted that Plaintiff "reports eating well" on May 28, 2022. (Id.) As to his general appearance, it was noted as follows: "Well-appearing man sitting up in bed, conversational and cooperative, appears in no acute distress." (Id.)

[5] In the refusal document, Plaintiff acknowledged that the treating physician had notified Plaintiff that pain, infection,

16

Services prescribed an antibiotic (Amoxicillin 500 mg) to treat Plaintiff's abscessed tooth. (Id., pp. 60, 68 - 70.) Plaintiff returned to Health Services on March 11, 2021, and Plaintiff was provided a second round of antibiotics (Clindamycin 300 mg). (Document No. 29-5, pp. 91 – 100 and Document No. 29-6, pp. 60 and 66.) On May 24, 2021, Plaintiff was again evaluated in the dental clinic where staff again noted that Plaintiff's had swelling and an abscess. (Document No. 29-6, p. 65.) It was noted that Plaintiff was going to be released in two weeks and Plaintiff was provided another prescription for antibiotics (Amoxicillin 500 mg). (Id.) On June 17, 2021, Plaintiff was released from custody to begin serving his term of supervised release. (Document No. 15-1, p. 4.) Plaintiff re-entered custody on October 22, 2021, and Plaintiff was designed to FCI McDowell on November 23, 2021. (Id.) During his Intake Screening on November 23, 2021, Plaintiff noted no tooth pain, no swelling, but acknowledged he had refused oral surgery of his back left tooth. (Document No. 29-6, pp. 119 -121 and Document No. 29-7, pp. 1 – 3.) During his confinement at FCI McDowell, Plaintiff first complained of tooth pain regarding tooth # 17 on January 11, 2022. (Id., pp. 44 – 45.) Plaintiff stated that his tooth was abscessed and requested Penicillin. (Id.) Defendant Brown evaluated Plaintiff and reviewed his medical records from FCI Edgefield noting Plaintiff's refusal of the tooth extraction. (Id.) Defendant Brown prescribed Penicillin VK 500 mg and noted that Plaintiff would "be placed on callout for treatment once we resume normal operations."[6] (Id.) On April 20, 2022, Plaintiff returned to Health Services again complaining of

_____

and death were possible consequences and/or complications of his refusal of treatment (extraction of tooth # 17). The refusal further indicated that Plaintiff "assume[d] all responsibility of [his] physical and/or mental condition, and release[d] the Bureau of Prisons and its employees from any and all liability for respecting and following [his] expressed wishes and directions.

[6] It was noted that the institution was on "modified operations due to COVID-19 pandemic and inmates are locked in their cells." (Document No. 29-7, p. 44.)

tooth pain (tooth # 17). (Document No. 29-8, pp. 55 – 57.) Defendant Ray evaluated Plaintiff,
conducted a periapical radiograph for Defendant Brown's review, advised Plaintiff that Defendant
Brown would "review his radiography and case as soon as possible and schedule treatment
accordingly," and instructed Plaintiff to watch callout for his appointment. (Id.) Defendant Brown
reviewed the encounter note the same day. (Id.) Plaintiff was placed on callout and scheduled to
have an in-house extraction of tooth # 17 on May 4, 2022.[7] (Document No. 29-8, p. 54 and
Document No. 29-4.) Plaintiff, however, failed to show for his appointment or make any contact
with Health Services regarding his failure to appear.[8] (Id.) On Saturday May 21, 2022, Plaintiff
complained of tooth pain at "pill line." (Document No. 29-8, pp. 5 – 6.) Plaintiff was evaluated by
a registered nurse, who prescribed Penicillin VK 500 mg four times a day for 10 days. (Id., p. 6.)
Two days later on May 23, 2022, Plaintiff was evaluated by Defendant Brown. (Id., pp. 49 – 50.)
Since Plaintiff was showing no signs of improvement with the Penicillin, Defendant Brown
changed his antibiotic to Clindamycin HCI 300 mg. (Id.) Defendant Brown further noted Plaintiff
would again be placed on callout for extraction of tooth # 17 and Plaintiff acknowledged "he no
showed for callout on 05/04/2022 for extraction of tooth 17." (Id.) On May 25, 2022, Plaintiff
presented to Health Services for a Chronic Care Visit and was evaluated by a PA Carothers and
Dr. Vibeke Dankwa. (Document No. 29-7, pp. 104 – 106 and Document No. 29-8, pp. 1 - 4.)
Plaintiff complained of tooth pain and swelling. (Id.) PA Carothers noted that she had the dental

---

[7] The callout was posted to Plaintiff's TRULINCS account on May 3, 2022, at approximately 2:00 p.m. notifying him of his dental appointment on May 4, 2022, at 7:30 a.m. (Document No. 29-4.) As stated above, Plaintiff was notified by Defendant Ray to watch for the callout. (Id.) Additionally, it was noted that "appointment cards were distributed to inmates on callout the day prior to their appointment." (Document No. 29-8, p. 54.)

[8] After Plaintiff experienced the above issues with tooth # 17, it was noted on November 17, 2022, that Plaintiff initially refused extraction of tooth # 31 because the extraction was going to be in-house and Plaintiff wanted to be placed under general anesthesia. (Document No. 29-8, p. 40.)

hygienist examine Plaintiff because Defendant Brown was not working that day. (Document No. 29-8, p. 1.) The dental hygienist noted that facial swelling was worsening. (Id.) PA Carothers prescribed a Ceftriaxone injection and Dr. Dankwa added Rocephin to the antibiotic regime. (Document No. 29-7, p. 104 and Document No. 29-8, p. 3.) Plaintiff was instructed to follow-up with Defendant Brown in the dental clinic. (Id.) The next day on May 26, 2022, Plaintiff was evaluated by Defendant Brown. (Document No. 29-8, pp. 46 – 48.) After noting that Plaintiff was not responding to the antibiotics, Defendant Brown transferred Plaintiff to the Emergency Department at Welch Community Hospital in Welch, West Virginia. (Id.) Welch Community Hospital then transferred Plaintiff to Pikeville Medical Center on May 26, 2022. (Document No. 29-8., pp. 67 – 78, Document No. 29-9, Document No. 29-10, pp. 1 – 7, 11 - 27.) Plaintiff was placed on IV antibiotics until his tooth was extracted on May 30, 2022, without any complications. (Id.) Defendant Brown called to obtain status updates on Plaintiff's condition on May 27, May 28, May 30, May 31, and June 1, 2022. (Document No. 29-7, pp. 91, 94, 95, 98, 101, 103.) Plaintiff was discharged from Pikeville Medical Center and returned to FCI McDowell on June 1, 2022. (Document No. 29-9, Document No. 18.) On June 2, 2022, Defendant Brown conducted a post-operation evaluation and Plaintiff reported that he was feeling much better. (Document No. 29-7, pp. 89 – 91 and Document No. 29-8, pp. 43 - 45.) Defendant Brown prescribed Augmentin 875/125 mg and Ibuprofen 800 mg, instructed Plaintiff to return to dental if he experienced any post-operation problems, and scheduled Plaintiff for a re-evaluation the following week. (Id.) Defendant Brown again evaluated Plaintiff on June 8, 2022, noting that Plaintiff's swelling was almost completely resolved and no further treatment was needed. (Document No. 29-8, p. 42.) Defendant Brown instructed Plaintiff to return to dental sick call as needed, and indicated that Plaintiff would remain on the routine dental treatment list. (Id.) Plaintiff made no further complaints regarding

pain or issues regarding tooth # 17.

Based on the foregoing, the undersigned finds that Plaintiff cannot establish a claim of deliberate indifference. Specifically, Plaintiff has not established that Defendants Brown and Ray knew of and disregarded Plaintiff's need for treatment. Although Plaintiff indicates that Defendants Brown and Ray refused to provide him with appropriate treatment and antibiotics, the record does not support such. The record clearly reveals that Plaintiff's condition was continually evaluated and treated by Defendants Brown and Ray at repeated follow-up appointments. Between January 11, 2022 and May 26, 2022, Plaintiff was evaluated seven times and he was provided prescriptions for antibiotics on at least five occasions. Furthermore, Defendant Brown took the appropriate steps to place Plaintiff on callout for a tooth extraction on two occasions. Plaintiff was a "no show" for his extraction scheduled for May 4, 2022. Although Plaintiff does not specifically deny he was a "no show" for the extraction, Plaintiff argues that he had "clear conduct that means [Plaintiff] never 'no showed' like the dental staff stated." Besides Plaintiff's bare assertion of "clear conduct that means [Plaintiff] never 'no showed,'" the record is void of any indication that Plaintiff had such clear conduct or that such would conclusively disprove Plaintiff was a "no show" for the extraction.[9] See Silling v. Erwin, 881 F.Supp. 236, 237 (S.D.W.Va. 1995)(a party must offer more than bare allegations or conclusory statements to survive a motion for summary judgment). Finally, the record reveals that Defendant Brown had Plaintiff transported to an outside hospital for treatment once she recognized that Plaintiff was not responding to the oral antibiotic treatment. Plaintiff received IV antibiotic treatment at Pikeville Medical Center until his surgery date for extraction on May 30, 2022. Plaintiff was ultimately successfully treated with antibiotics

_____

[9] The record indicates that an incident report was written. (Document No. 29-8, p. 54.)

and a tooth extraction. Similarly, treatment provided to Plaintiff by Defendants Brown and Ray included the prescription of antibiotics and the scheduling of a tooth extraction. After Plaintiff's second complaint of tooth pain (April 20, 2022) to Defendants Ray and Brown,[10] Defendants scheduled Plaintiff for a tooth extraction occurring approximately two weeks later (May 4, 2022) and Plaintiff was a "no show" for the appointment.[11] The record is void of any indication that Defendants Brown and Ray disregarded Plaintiff's alleged need for treatment. At most, it appears that Plaintiff merely disagreed with Defendants Browns and Ray's treatment plan. Specifically, Plaintiff appears to believe he should have been provided antibiotics during his appointment on April 20, 2022. An inmate's mere disagreement with his medical care or the course of treatment for an objectively serious medical injury generally will not constitute a sufficient basis for a constitutional claim. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); also see Lewis v. Proctor, 2010 WL 148383, * 3 (N.D.W.Va. Jan. 12, 2010)(an inmate's belief that one doctor's treatment plan was better than another's does not state a constitutional violation); Oglesby v. Abbassi, 2013 WL 4759249, * 7, n. 12 (E.D.Va. Sep. 4, 2013)("certainly no claim is stated when a doctor disagrees with the professional judgment of another doctor"). Finally, Plaintiff argues that Defendants Brown and Ray "went against their degrees [and] training." Even assuming Defendants Brown and Ray failed to provide appropriate treatment, the undersigned finds that Plaintiff cannot establish a claim of deliberate indifference. It is well recognized that "negligent medical diagnoses or treatment, without more, do not constitute deliberate indifference." Webb v. Hamidullah, 281

---

[10] Plaintiff first complaint of tooth pain to Defendants Brown and Ray was on January 11, 2022, and Plaintiff was provided with antibiotics. Plaintiff's second complaint to Defendants Brown and Ray was on April 20, 2022, and Defendant Brown was scheduled to perform the extraction two weeks later (May 4, 2022).

[11] Plaintiff has a history of refusing treatment/testing and "no showing." (Document No. 29-6, pp. 89, 92, 95, 101, 103, 112 – 118 and Document No. 29-7, pp. 68, 75.)

Fed.Appx. 159, 166 (4th Cir. 2008)(noting that a defendant's consultation with outside experts supported inference that a misdiagnosis was not deliberate indifference); also see Bridges v. Keller, 519 Fed.Appx. 786, 787 (4th Cir. 2013)(where prison officials were promptly responsive to inmate's complaints and regularly administered treatment, prison officials' failure to correctly diagnose plaintiff's condition did not render their responses deliberately indifferent); Sosebee v. Murphy, 797 F.2d 179, 181 (4th Cir. 1986)("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."). Accordingly, the undersigned finds that Defendants Brown and Ray did not act with deliberate indifference in providing treatment for Plaintiff's abscessed tooth. The undersigned, therefore, respectfully recommends that Defendants' "Second Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 29) be granted.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court District Court **GRANT** Defendants' "Second Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 29) and **REMOVE** this matter from the docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the

basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Faber and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: May 8, 2024.

Omar J. Aboulhosn
United States Magistrate Judge